Good afternoon. May it please the Court, my plan is to reserve three minutes for rebuttal. You may do so, Counsel. Just watch the clock. Thank you. I'd also like to devote about one minute to the waiver issue that's presented before moving on to the two substantive claims that the government has asserted. The reason the government gives for not having asserted these two new claims at the trial court level, which was found at footnote three of the government's remand brief, is that it considered the MacGyver case to be dispositive and controlling on the issues presented. I don't really think that's a very sound reason for not asserting those claims, because litigants frequently assert fallback claims, even if they're very confident in an initial claim they might have. So you're saying that they're waiving the MacGyver claim? Is that what you're arguing? I'm arguing that the government is waiving both of the new claims that it presents on remand for the first time. That is, its claim that the exclusionary rule should not apply because the officers acted in good faith, and its claim that a new exception to the warrant clause should be carved out for this GPS surveillance. However, you would agree, wouldn't you, with Ruiz, that the rule of waiver is a discretionary one in each court? Well, Your Honor, I've made the argument in my brief on remand that because the Supreme Court dismissed one of the new claims of the government in that case with a kind of perfunctory paragraph. I realize what you're arguing. I realize what argument you made, but it seems to me the Supreme Court is similar to us. They have a discretion to decide whether they're going to waiver a claim, say a claim is waived, or whether they're not. But Ruiz, our case, which we have to follow, at 667 Fed Third, says the rule of waiver is a discretionary one. We may consider issues not presented to the district court, although we're not required to do so. And then it gives us three exceptions that we use. Well, Your Honor, I'm sorry if I interrupted. No, you didn't interrupt. I just – I mean, I can understand what you're arguing, but Ruiz is controlling in my mind, so tell me why it isn't, I guess. Because, Your Honor, in the Jones case, there's no hint that the Supreme Court The Jones case is not in front of us as to waiver. The Jones case didn't even talk about the good-faith exception. That's true, but it seems like the Court might have considered whether it had discretion to review the new claim the government asserted if it believed it had discretion, but it didn't even address the issue of discretion. Just because of what it said, do you think it didn't address it? What did it say? It just said the government has not asserted this claim in the lower court, and therefore we deem it forfeited. Yeah. As to that, we deem it. But did they say that's the way it is forever, for all cases? No. In fact, that's not the case. That's not the case. In fact, that's what Ruiz says. Well, waiver is discretionary. If they want to deem their particular case forfeited, good. Your Honor, this is the kind of issue that this Court deals with all the time. There's a lot of case law on it, and some of it's confusing and contradictory. And I'd prefer just to rest on my briefs on this issue, except for one further point. Well, I guess my worry about that is, if it's discretionary, it seems to me you've got to tell me why one of the three exceptions might not be applicable. I will, with respect to the good faith claim. The government points out that one of the police officers who conducted the surveillance actually had advice of counsel. So perhaps the record would have been developed differently at trial had the government asserted its claim that the officers acted in good faith. We don't know exactly what kind of advice that was. The police officer might have been advised that the attachment of the device was within the law. He might have been advised. But we don't know whether he was advised that the trespass that was involved into the suspect's cartilage was also lawful. So what you're really arguing is, if not waived, Judge, please send it back for us to have some evidentiary hearing on this and produce our own evidence about why this should not be something we should take up again? Is that your argument? Yes, Your Honor. And also that it's – it would be fair to allow the defendant to withdraw his conditional guilty plea and consider these new claims before he decides whether or not to plead guilty. He didn't have the benefit of being able to assess the merit of the claims when he entered his conditional guilty plea. Well, but when he entered his conditional guilty plea, he entered the guilty plea on the condition he'd be able to pursue these particular claims, correct? Well, the only claim he had asserted was that the search was unlawful. And the only claim the government had asserted was that it was lawful because it didn't violate the Fourth Amendment and no warrant was needed. It didn't assert good faith or reasonable suspicion. Why don't you get to the main issue in the case? With respect to the good faith claim, I think there are two aspects of the Jones decision that are important. One is that Jones distinguished the Knotts decision. It did not overrule Knotts. So that can't be relied on by the police in this case as establishing any clear rule of law. But it didn't overrule Knotts. It distinguished Knotts. Yes, but did not overrule Knotts. If it had overruled it, it would have been a better case for a good faith claim because that would have been closer to the Davis situation. The Davis case is the one that the government relies most heavily on, in which kind of a bright-line rule of law that the officers relied on was later reversed by the Supreme Court. That's not what occurred here, because Knotts was not overruled by the Supreme Court in Jones, but distinguished. I think the other salient aspect of Jones is that its trespass analysis, it specifically said, was nothing new. It did not break new ground at all. The Supreme Court held that trespass has always been a part of Fourth Amendment law. Well, but just a minute. If I read Jones and I quote at 950, they say, our case law has deviated from that exclusively property-based approach tied to common law trespass. Common law trespass approach to the Fourth Amendment jurisprudence still remains in force. Why would they have to say it still remains in force and talk about how it's I think that's a good question, Your Honor, but I think the answer is that people had just kind of started to assume that this reasonable expectation of privacy test that came from the Katz case originally was the only test that applied in Fourth Amendment case law. That test was had to be at the same time as the Fourth Amendment case law, and it was the only test that was applied in Fourth Amendment case law. And so that's why we talked about reasonable expectation of privacy. And then finally, we have this case which talks about trespass. Well, there might not have been very many other cases that involved trespass to personal property as this one did. So it was fairly out of the ordinary in that respect. A lot of cases involve seizure of the person, an arrest. They involve search of a person. They involve entry into a house. And none of those – in the usual run of Fourth Amendment cases, it's just not necessary for the Court to consider whether there was a trespass, and especially not a trespass to personal property. But in addition, the Supreme Court cited two post-Katz cases which it found had applied a trespass analysis. But in any case, I mean, I'm just going by what the Supreme Court has told us, Your Honor. And the Supreme Court has made a – has given emphasis to the idea that trespass has always been a part of our Fourth Amendment law. That it was doing – that it was not – that Katz did not supplant the trespass analysis but added to it. Well, it seemed to me that that's what they said, but it seemed to me also they were saying, you know, we've deviated from this approach previously. And we're just here to tell you it's still in a force and in effect. Well, the – Nobody argued trespass the last time you were here. Nobody thought about arguing trespass the last time you were here. Nobody thought about arguing trespass to the – to the D.C. Circuit. It was something the Supreme Court came up with in this particular case, which neither the Ninth or the D.C. Circuit talked about, right? I – I suppose that's accurate, Your Honor. I did argue trespass to curvilege. Certainly that was a major issue the last time I was before this panel. And I did argue that the attachment was a – a seizure of the automobile in and of itself. I didn't devote much time to that because it was foreclosed by the MacGyver case. Well, counsel, having mentioned MacGyver, help us sort out why wasn't there good faith reliance on MacGyver by the officers in this case? Because of the curvilege issue, Your Honor. Now, curvilege was only one of the seven occasions.  I'm sorry, Your Honor. The curvilege issue only applied to one of the seven instances in which the device was added or replaced? Yes, or a couple of times. The police either attached the device or took the device off several times, and sometimes they did that. Seven, I'm told. Do you agree or not? I think so. I think you're right in that some of the time the car was parked on a public street and some of the time within the curvilege of the suspect's property. But the government hasn't made any argument that it obtained the incriminating evidence it did through only through surveillance conducted after the device was attached to the car while it was on the public street. And I was careful to point that out in my opening brief in the first phase of the appeal, and the government didn't dispute that. Does the record help us in that regard? If we were to search the record, will it give us a chronology of when the device was placed and then replaced and then replaced again and where? And the information derived each time? No, I'm afraid not, Your Honor. And like I say, the government never argued that it derived sufficient incriminating evidence to constitute cause to stop and arrest the device. Well, you would certainly agree, would you not, that the agents could rely on McIver for at least placing the device on the car or not? You argue that? At least that aspect, McIver seemed to be controlling authority. At that time? At that time. It's certainly not anymore, of course. Of course. Yeah. So when we move to monitoring, and I appreciate that I'm getting into your three minutes, but when we move to monitoring, it seems to me that the exclusionary rule serves only to deter deliberate, reckless, or grossly negligent conduct. How can I suggest that this is deliberate, reckless, or grossly negligent, as Herring would suggest? It seems to me, if we even would agree that this was OK to do, that the best we could say is this is negligent. So if it's only negligent, then the monitoring would still be subject to the exception as well, would it not? Your Honor, I would point to a passage in the Herring case at page 145, in which it summarizes some good faith law and also says that the officer, that a reasonably well-trained officer is what is at issue, and that's from the Leon case. But then it goes on to say that what a reasonable, well-trained officer would have known should be evaluated in light of all the circumstances, and those circumstances frequently include a particular officer's knowledge and experience. Now, in this case, as the government points out, this particular officer had the advice of counsel when he conducted the surveillance at issue. Counsel, you're down to a little over one minute. It's your choice. I think I'll just reserve one minute, Your Honor, so that I can get to the other issue. In 15 seconds. Okay. Anyway, with respect to the reasonable suspicion, new exception to the warrant clause that the government maintains should be adopted, the only remotely comparable case would be the Terry v. Ohio stop-and-frisk exception. That was a fairly momentous decision issued about 45 years ago. All of the other cases the government relies on involve certain unusual circumstances where a person's, a suspect's expectation of privacy is already diminished, such as a parolee, a pardon, a probationer, a school child, or someone at a border crossing, something like that. So it would be particularly momentous here for the Court to do it again, for the first time after Terry, and such an exception ought to be adopted only by the Supreme Court. Thank you. I think I've got 10 seconds left. You've got 10 seconds left. Thank you, counsel. We will hear from the government. Counsel, you may proceed. May it please the Court. Kelly Ziesman, appearing on behalf of the United States. Judge O'Connor, I'd like to begin by answering your question about whether or not there's anything in the record to give you a clearer picture of when these devices were placed. In fact, there is. The government's Exhibit 1 that was submitted and received by the district court is a log of each GPS placement device. In fact, the defendant cited that exhibit and relied upon it in his opening brief. But for whatever reason, it was never included within the excerpts of record that were submitted to this Court. I've brought along copies of that exhibit for the Court and for Mr. Latto if he would like those, if they would be helpful. They're in the record, are they not? They are. Well, let's pursue that for just a moment. Is there anything that Exhibit 1 will show us that would connect up the placement of the device with the stopping of the car that resulted in the arrest? Yes. And what is that? Yes. In fact, the way the data log reads is it shows the date that the agent consulted with the assistant United States attorney. It shows the date and time that the device was installed. It shows the date and time when the device was removed, and it shows the location of where the device was installed. So you can see from this data tracking log that there were two occasions when the device was placed on Mr. Panetta's car while it was parked in his driveway. All of the other times, it was when it was parked on the street in front of the house or in a public place, for example, Ray's Supermarket down in Medford. Well, what would we find if we go through that record that would connect up the arrest with the most recent fixing of the device? What you will see from this data log is that, in fact, the device was placed on the car within a couple of days of the arrest while it was parked in a public parking lot, and that is Ray's Grocery Store. And so that was on September 10th. The arrest here took place on September 12th of 2007. So that final key piece where we track them out into the middle of the forest, the Madrona Grove, in the middle of the night, where they stayed for 5 to 10 minutes and then they made the 3-hour drive back into town, was information gleaned from the device that was placed on the car while it was parked in a public grocery store parking lot. Assuming that we focus on the seventh fixing of the device that you've just described, what do we do with the first six? What legal significance does that have for Fourth Amendment purposes? I think the legal significance is, and because this wasn't challenged before the district court, you know, had we been concerned about this at the time, we would have argued that if you even severed out the information that we gathered based upon when the car was parked in this driveway, we still had plenty of evidence to support both reasonable suspicion and probable cause to justify the stop of the car. And then thereafter, Mr. Pineda consented to the search of the car and ultimately the search of his residence. And in terms of the rules, it seems to me, and I'm going to change this just a little bit, it seems to me that in order to really get to arguments at all, we have to go with the rule of waiver and say that it's discretionary. Would you agree with me? Yes. And it seems to me that given the three circumstances in which waiver might be something we would look at, that number one exception would not be something we'd look at. But if I look at number two and number three, the good faith exception wasn't even presented to the district court, was it? That's correct. If it wasn't presented to the district court, then why shouldn't I remand to the district court to allow the defendant to have the opportunity to develop evidence in the underlying record that would show the nature of the agent's conduct? It seems to me that that's something they've never had a chance to do. Why wouldn't I just remand to allow that to happen? Because the application of good faith is an objective test, and it's one that this Court has applied. But we don't have much evidence there about good faith. I mean, they didn't get a chance to even develop it, did they? That's true. That's because at the time we were relying upon MacGyver and not. Right. So what we're really talking about is sufficiently deliberate and sufficiently culpable. And I think you can determine that based upon what you have here. It's hard for me to envision how we could today in 2012 look back at what these agents did in 2007 and say that in light of the state of the law in 2007, in which this Court in MacGyver had approved the use of a GPS device, the Seventh Circuit in Garcia had also approved it, the Fifth Circuit in Michael, at that time there was no dissent within the federal courts about the validity of using and relying upon GPS to support an investigation. Based on that alone, and as this Court did in Gonzales, in Gonzales, the issue of good faith following Arizona v. Gantt wasn't raised until the first time on appeal. Jones changed. And I was on that case. I understand you were. And we said, oh, well, the Supreme Court said what they've had to say, we're not going to do anything about this. It went to the Supreme Court again, and we got beat up again and said, you should have allowed good faith. Twice I got beat up by them. Now I see myself in a position where when he didn't even get a chance to develop the evidence, shouldn't I be a little cautious? And I apologize for bringing up a painful subject, Your Honor. Well, it isn't that painful because I've dealt with it. I guess that's the only reason. But I mean, that's the worry. In Exception 2, that's the change of the law. Then I read Patrin, P-A-T-R-I-N. I'm from Idaho, so I say this funny. But Patrin, it says, in cases where a new theory or issue has first come to light during the pendency of the appeal because of a change in the law, remand for further findings of fact and to give the parties a chance to develop their arguments in light of a new theory or issue should be required. And I think good faith is an exception to that. This Court addressed good faith for the first time on appeal in Hendricks and ruled that as a matter of law, good faith applied. Did the same thing in Gonzales, and Davis also did the same thing. So I think, although there are times where you need additional fact findings, good faith, because it is an objective standard and because you're really looking at a sea change in the law, this case really aligns up very neatly with what happened between New York versus Belton, Arizona versus Gant, and Davis. We have the same sort of, you know, we thought we were done with property law after Katz came down. And then Jones kind of surprised all of us. You know, this Court and McIver and Magana and a lot of other cases were really looking to reasonable expectation of privacy. So that changed with Jones. And because of that, and because these agents, I don't think reasonably could be expected to foresee that the Supreme Court was going to do what it did in Jones, not back in 2007. Maybe after 2010 when Maynard came down, perhaps. But back in 2007, all the law from the federal courts was in our favor. And they didn't do anything that this Court hadn't recognized in McIver. And if I may just briefly turn to this issue about curtilage in McIver, and it's an important point that I just want to be sure that I make today, and that is that this Court recognized the first time we were here that the facts in this case were squarely on with McIver. The only difference was that in this case we had conceded, based upon Magana, that the driveway was within curtilage. That was, that concession was a litigating position. It was a decision made by the lawyers involved in the case. Basically, we thought, gosh, this whole notion of whether or not a driveway is in curtilage or out of curtilage, there were a lot of cases going a lot of different ways, and we thought, you know what, in light of Magana, it doesn't really matter. So we're just going to go ahead and concede it. That was a litigating position. That wasn't something that the agents ever did. And I don't think anything about our litigating position on curtilage should be held against the agents in this case who relied in good faith on McIver that the placement of a tracking device on the vehicle was perfectly lawful. And as you mentioned earlier, the standard from Davis harkens back to Herring and Hudson, and that is that we're looking for some recklessness, some bad faith, some flouting of the law, and we simply didn't have that here. Well, and again, that's the thing that worries me about shouldn't I remand, give at least the appellant here, Pineda Moreno, the chance to determine whether he can come up with some evidence about that, because what we have in our record is really not at all looked at in the district court. All we have is, well, we've got McIver, doesn't say anything about monitoring at all in McIver, and so we're set with trying to determine on a record which this poor person has not had a chance to develop whether it's deliberate, reckless, and grossly negligent. And if I may, two responses to that. The first is that Mr. Pineda hasn't requested a remand, and I'm not sure, given the nature of good faith, what type of evidence he would produce. I mean, even if he produced evidence that these agents had ill will in their minds, we know that the subjective intent is irrelevant. It's objective good faith. And here, if you look just at the facts in this case that square up with McIver, that's where we have good faith. And the other as a practical matter, and I'm not quite sure how this would work, is that Mr. Pineda, in fact, has been removed from this country. So I'm a little concerned about exactly how we would carry out a remand since he was removed to Mexico. I understand that's not dispositive, but at least it's a practical consideration here as well. Scalia. Counsel, go back to McIver and the good faith reliance argument that you're making. Does McIver alone resolve the issue? Because McIver dealt with the placement of the device. What about the reliance on the information that came from the device? You heard Mr. Lotto say that Knots has been distinguished, in which case, perhaps, according to him, McIver isn't enough. You need McIver plus something more. What's your response? My response to that is that in McIver, McIver itself actually, it acknowledges that McIver himself never challenged monitoring. But it goes a little bit further than that. It also says that he doesn't challenge monitoring, forthrightly acknowledging Knots. So at least as I read McIver, the court was saying he hasn't challenged monitoring because he can't, because Knots forecloses him from challenging monitoring, because Knots involved monitoring one's movements through the public thoroughfare. Exactly what we have here. Mr. Pananda was monitored only while he was driving on public streets. So it's McIver plus Knots that leads to the good faith of the officers here. And then we've also cited the court to a number of Ninth Circuit cases that predate Knots that also said that monitoring one's movements through the public thoroughfare was entirely, it did not implicate the Fourth Amendment. So we look at the law enforcement officers, the several who were involved in the seven plantings and monitorings, but we don't really look at their subjective attitude, do we? That's correct. Don't we just look at what reasonably prudent law enforcement officers doing what  That's correct. Yes, because the Whether they went to the county attorney or the U.S. attorney or not doesn't matter. It does under this Court's decision in Brown. Brown held that consultation with an attorney before an agent actually takes some action is strong evidence of the agent's good faith. We suggest not reckless at that point. Correct. Correct. And again, there's no, there was no dispute that in fact the agent in this case, and it was a single agent who was operating these GPS devices, no dispute that in fact he did consult with an assistant U.S. attorney before each one of these placements that was presented before the district court and was never challenged. Just one final note, if I may, I've got 58 seconds left, is in terms of the waiver argument and what's new and what's not, I agree. We raised good faith for the first time after the Supreme Court decided Jones. And I don't think it should be waived because Jones was a new decision and it was a startling decision like Arizona v. Gantt. In terms of the reasonable suspicion argument, though, I don't think that was ever waived because in fact it was raised. Judge Panner made a factual finding that we had reasonable suspicion prior to using the GPS devices. And where was that? That's in the record. It's at GER 9. And it's in Judge Panner's decision. Panner's June 10th decision? I believe that's correct. But he makes that factual finding, and I went back and checked, the opening brief on appeal did not challenge that factual finding. And so we didn't raise it because it was unchallenged. So that, as far as I'm concerned, that's not a new issue. That's one that the district court found. So we have that as a viable alternative basis to affirm Judge Panner's ruling here. Thank you. So we can't just cite the Supreme Court in Jones and say, as they did, forfeited because it was not raised below. I would appreciate it if you didn't, Your Honor. Thank you very much, counsel. Your time has expired. Mr. Lato, you have 10 seconds. I have some other points to raise, Your Honor, but I'm sure not going to make them in 10 seconds. Raise your best point, please. The issue that Your Honor raised about whether the government obtained sufficient information to arrest the defendant derived solely from the time from the device was affixed while the car was on public property, that's a claim raised not just for the first time in the briefing, but for the very first time here at oral argument. In fact, I believe that it was repeated visits to this suspicious area just south of the California border that contributed to the probable cause to arrest the defendant, not just the final one. All right. Thank you very much, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Wolle, O'scannlain, Smith